5626, United States of America v. Philip Michael II, oral argument not to exceed 15 minutes per side. Mr. Cushing for the plaintiff's attorney. Good morning, your honors. May I please the court, may I please reserve three minutes for rebuttal. Thank you, your honors. Your honors, we're here on the question of the proper scope of the Aggravated Identity Theft Statute 18 U.S.C. Section 1028A. This court has written on that question, but here the district court got it a little bit wrong. The court has not ever adopted the broadest definition of the word use in that statute. But by the same token, the court has never adopted the most narrow view of the word use, which is the view that the district court took in this case. This court adopted the definition of the pattern jury instruction in United States v. Medlock. And that instruction says that use means active employment of someone else's identity. This court has said that the defendant can act on someone's behalf, can impersonate the person, but doesn't have to. Can act on their behalf or do something to get something of value in that person's name. In this case, we have a pharmacist who presented a completely false claim to an insurance company for a prescription. The doctor did not authorize the prescription, the patient did not request the prescription, and did not request that an insurance claim be made on his behalf. The pharmacist here, what do we do about some of our cases, maybe it's Medlock, maybe it's Miller, maybe even White too, says, well, it doesn't apply when you lie about what someone did, right? You know what I'm referring to? We keep seeing that. And wouldn't it be fair for them to say that's what was going on? The lie here was that the doctor prescribed it. The lie here was that the patient asked for it. And that didn't happen. So I'm just saying, if you look at our cases, that analytical point appears in them. And I think they're trying to use that analytical point here. So what do we do about that? That's the very mistake the district court made here. That is not the law. That's not what this court has adopted. And this court made perfectly clear in Medlock that that is not the law. The court said it doesn't matter whether you act on somebody else's behalf or act on your behalf or lie about what someone else did. The question is, did you use their identity to get something that you wouldn't have been entitled to without using their identity? Isn't that exactly what happened in Medlock though? It is not, Your Honor. Because in that case, the defendant used the identity of the patient to get recovery. They falsely stated that these patients were being carried on stretchers in order to get the claim paid. And that was false. But our court nevertheless held that that was not a violation of the statute. That's because they were already using the identifications in a legal manner. They were already, the identities were on the forms for the transportation that this company provided for those patients. What they did with those forms is they then inflated the services that they provided to get more of a recovery than they would have gotten. That's still a false statement though. It was. But this court made that distinction that their names were already on there. They didn't have to use their names to inflate the claim. Well, if they hadn't submitted the names, they wouldn't have gotten the claims paid, would they? No, they wouldn't have. But by the same token in Medlock, this court affirmed a count where the defendant submitted a completely false claim. They hadn't transported this patient at all. A doctor had not authorized the transportation, which is in contrast to the other counts that was found not to be aggravated identity theft. Instead, the claim was completely false and Mrs. Medlock, Kathy Medlock, I think it was, forged the doctor's signature. In this case, Michael used the doctor's physician's national provider identification number in place of a signature. Everything is done on computers these days. You don't need a signature. You need to type in that number. And that's as much an identification of that doctor as the forged signature was in Medlock. Similarly, in Miller, when a claim was made for plane tickets at a discounted rate. White. I'm sorry, did I say Miller? I meant White. Thank you. I'm sorry. Thanks for correcting me there, Judge. In White, when the defendant submitted a claim for a discounted ticket, that wasn't identity theft because she really was seeking a ticket for that person. And just lied about the discount they were entitled to. When she tried to shore up that lie with creating a completely false identification, military identification is what it was, that was the aggravated identity theft. And here, we've got that situation, the situation of the affirmed Count Medlock, the situation of the affirmed Counts in White, where this doctor, this pharmacist, excuse me, presented a completely false claim for a prescription using the doctor's identification, using the patient's identification. And it was completely false. These cases are very hard to read in terms of pulling them all together, whether you focus on the analytics or you focus on outcomes and fact patterns. But let me try one out on you for both of you as a way to think about it. In one sense, every one of the cases involves means of identification. And every case involves a lie. And yet, they don't all allow these things to be established cognizable claims. What about focusing not on use and means of identification, but focusing on during and in relation to? So, for example, you know, you could say, if you go back to Medlock, in that case, the lie, and you were kind of pointing this out, the lie isn't about these people being transported. The lie isn't about, you know, who they were and whether they were transported or not. The lie was about whether it was an emergency. And that has nothing to do, that's not during and in relation to use of means of identification for the fraud is, I guess, the point I'm getting at. Whereas in White, you kind of can say the same thing. And I like the way you put it. Initially, you would not have a claim. You wouldn't have a cognizable claim by the application for the reduced fare. It's just like Medlock at that point. They're real people. You really are asking for airfare. You just had a lie about what kind of airfare they deserve. It only becomes use of the means of identification during and in relation to a fraud when they doctor the ID. But the point is, it's not use to focus on. It's not even means of identification. It's during and in relation to. So it's almost a causation point. How does that, does that reconcile the cases or not? I think it's a good start. Let me try to, if I can. You're a lot smarter than I am, Judge. You're familiar with me. You think I'm setting a trap for you. I can already tell. Not at all, Judge. Not at all. I think that may be dovetailed nicely into this court's adoption of the pattern jury instruction in Medlock. And the during and in relation to here, the entire claim was false. So this wasn't, I'm submitting a claim for 50 pills. And I'm going to inflate it to 100. Exactly. That's the analogy to Medlock. I mean, that's what I want to hear from your side. That if it were like Medlock, it would be initially it's 50 pills, it's the right doctor, it's the right patient, it's the right pharmacist. And the fraud becomes taking it to 1,000 pills or a higher, a better prescription in terms of reimbursement. So I think we're on the same page then. So here, the during and relation to, he had to have identities to create this false claim. And he took the identity of a patient, used his identification, birth date and other identification, you know, insurance number, that kind of thing. And took the identity of the doctor, his name, and his national provider identification number to submit this false claim. So he, during and in relation to this completely false claim, he used these identities. And that is our argument in a nutshell. So that's, we ask the court to reverse the district court here. My law court tells me there's not a lot of these cases around the rest of the country. The Sixth Circuit seems to ask, why do we have all these cases and no one else does? I mean, what's happening with this type of problem elsewhere? Do you know? Are people just not challenging it? As far as, I mean, I didn't do extensive research on that and ask others. I was, I mean, this is completely outside the record. So if you want to tell me to stop, then do that. It's case law. Oh, okay. I thought you were asking for practices in the offices. In case law, the courts have not focused strictly on the use like this court has. The two cases that we cited in our opening brief focused more on theft. Stolen identity. Did they have to steal it? But those fact patterns are similar to ours, at least the Abdul Shafi case. And then in our reply brief, we cited that unpublished case from the Eleventh Circuit, Jones, that dealt directly with this question of whether the defendant, the perpetrator of the crime, must pass himself off or impersonate the person whose identity was stolen. And the Eleventh Circuit said, no, that is not a required proof. Did any courts say use only means impersonation? No, not one court does that, Judge. And this court doesn't do that. Even in Miller, not yet anyway, Judge. The court judge that's doing it? Yes. In Miller, this court set forth, it was actually the defendant's definition, in terms of three different ways to use someone's identification, only one of which was actually impersonating the person. So one, no, that isn't an element of the crime. Even if it was, you can make an argument here that Michael impersonated, he had to impersonate the patient, the doctor, and then present himself. So he was representing himself as all three people on this claim, himself, the doctor, and the patient. Traditional impersonation, I don't know. It is not. I don't think we need to go there. But if we have to, there it is. So the definition that this court adopted in the pattern jury instruction fits perfectly with this case. It fits perfectly with Medlock and with White. And we ask the court to reverse the district court here. Okay. Thank you, Your Honor. Ms. Elver. Good morning, Your Honors. May it please the Court. This case is an authorization case. The definition of use comes down to authorization like it did in Miller, like it did in Medlock. This case, and just to start by giving the court a little bit of context of what the government is alleging in this case, it was a single claim in which Mr. Michaels submitted to Humana a request for reimbursement for a cholesterol medicine, a non-controlled, essentially prescription fish oil medication. The reimbursement amount was for $199.57. So just for a little context about what the issue is we're talking here. Like in Miller, Mr. Michael didn't impersonate anybody. He didn't pretend to be somebody he was not. The claim was submitted as Mr. Michael, pharmacist for Aragon Pharmacy. Has any case besides the lower court in this case said use only means impersonation? I think Miller, while Miller argues or adopts the fact that the use is ambiguous and kind of adopts the defendant's position in that case, but it doesn't hold that acting on behalf of is a matter. What Miller holds is that as a matter that simply submitting a piece of paper with individual's names on it, signed by the defendant, doesn't constitute use under the aggravated identity statute. Right. And the way I was trying to think about it is it really is helpful to think of during interrelation. I mean, so Medlock to me is the key case, right? I mean, there the people were transported, they really were transported there, and the fraud was lying about what the service was and upgrading the service, which doesn't relate to use of means of identification. Because they were really transported. And so here, what would make this like Medlock would be a case where there really were prescriptions for a certain drug by real people and real doctors, and the fraud was to change it for a different drug that has a higher reimbursement. That would be a fraud. But like Medlock, it wouldn't be using means of identification for the fraud, because the fraud would be upgrading the drug or service you want reimbursement for. But that strikes me as what Medlock's insight is. You've got to connect the misuse of means of identification to the fraud. That's where during interrelation come to. But here, this is fraud from the beginning, and fraud with the doctor's ID and fraud with the patient's name, birthdate, et cetera. That's why I feel like Medlock is the best case for you from my perspective, but that's how I see it here, which does hurt, would hurt you if that were right. Medlock should be looked at as an authorization case. And so in this case, while looking at the, and what the government has argued, is that the submission of the claim, an entirely false claim, that's the underlying, that's the predicate offense, that's the health care fraud that's counted in, that's alleged in count seven. There needs to be something more. There needs to be the use of an identity in furtherance of that underlying crime. But they did. The identity was the doctor's ID and the use of the patient's name, right? But I think those, I'm sorry, I didn't mean to cut you off. Well, no, I'm just saying they used them to commit a fraud. But without those, there would have been no claim. That's part of the claim. I think the authorization, I think Medlock's important because it's an authorization case. I think what the individuals in Medlock lied about was the authorization, what they were entitled to, what benefits they were entitled to for the service that they provided. In this case, Mr. Michael lied about whether he was entitled to reimbursement for distributing or for dispensing a medication. Maybe another way to put it is if I'm understanding your theory of the case correctly, you would say the statute does cover this fact pattern but just change one thing. He says he's the doctor, right? Because then that would be impersonation. Right. But you say the line is authorization. That's still an authorization case. I just don't know what that means. I think in that instance, he would be impersonating. I think the definition of use, and if you look at the three cases together, really what use means is to impersonate somebody else, to pass yourself off as somebody else, or to create a false persona for yourself or for somebody else, which was White. In Medlock... You just established something that I think we all agree. White shows it's not just impersonation, right? Because that was not an impersonation case. Right. But she created in White, the defendant created false identifications, created military IDs for her clients and submitted them as accurate on behalf of her clients, submitted false information, and under Head Note 7 in White, the court specifically noted that just her lying about whether her... What someone else did or what they did... Right, wasn't enough. That line doesn't work for me. Everybody's lying about what someone did in these cases, including the cases you think are covered by the statute, right? They all include lies about what you did or someone else did. Right. So it's just not a useful... It doesn't tell me what's on one side of the line when that proposition applies to all the cases. Well, and I think what's important is that the underlying predicate offense. I think it's significant that the healthcare fraud claim, the government has pled that argument. The government has argued that there's a false claim that was submitted. There has to be, for aggravated identity theft, there has to be something more. There has to be use of somebody's individual either impersonating or creating a false persona. And if you look in the context of the statute, use, it should be read pretty narrowly because of the words that are around it. And transfer or possess are relatively narrow verbs. Use alone is a big verb. I get that point, and it's in the cases. But what I would say there is why isn't that just a function of... Transfer and possess is dealing with physical means of identification. And use is dealing with it when it's intangible. So that's how I see that. But let's just go back to White and what exactly we're trying to do here. The falsity with the means of identification is putting on it that this person's a vet. That was the lie. And it's a means of identification. John Smith, everything's accurate. John Smith was born this day. John Smith wants airfare. Lie in the means of identification is that they were a vet. So if I take that cognizable lie and put it here, what I would say the lie is, is did you prescribe a medication? Or for the patient, did you ask for a medication? So it's very similar. You're using a real person, real birth date or ID, the doctor, and then you're just adding a lie to it. So why isn't that the same? Because it was the creation of a completely false persona in White. In this case, you have a real patient, that person existed, and a real doctor. But it's not a false persona. I thought they were real people that were getting the airfares. They were real people, but to say that that individual was military is creating a false persona for that person. But why isn't a false persona to say someone needs drugs when they don't? I mean, they're a diabetic or they're not. So they say they need a diabetic drug. Isn't that like whether they're military or not? I don't think so. I think there's a distinction there. And I think the distinction is that it wasn't an entirely new persona created, similar to the, and I think perhaps the distinction would be in the signature, the count in Medlock that was affirmed, the forgery. And in that case, signature is a means of identification. And in that case, signing as someone else is creating a false identification. In this case, there was nothing false was created except for... I'm just trying to figure out why there was no signature. I assume it's because it was all electronic? It hasn't specifically been pledged. It's not specifically in the facts, but yes, that's my understanding, is that it was all... It just seems really funny that one is covered because it happens to be in paper and the other's not. I mean, isn't electronic presumptively signed? An electronic signature would be valid. But I think it goes back to authorization, I think is what is important here. And I think this case is on par with Miller. In which in Miller, and by using your example that you used earlier, he submitted in connection with or in relation to getting the loan on behalf of the entity that he was purportedly representing, he submitted names. He wouldn't have gotten that loan without those names and authorization to pledge that collateral. Similarly, in this case, he submitted in his own name, signed by his own person, or in his own name, the name of a patient, the name of a doctor. And without submitting those names, there wouldn't have been a claim. And that's the underlying healthcare fraud. If it's anything. Does it make a difference in Miller that it was an entity that the lie was about? I don't think so because... The fellowship, right? I mean, the fellowship was the guarantor, right? Not the individuals, am I right about that? Correct. And in a footnote, I think the court, footnote five in that case, the court kind of acknowledges that he was acting on behalf of the entity as opposed to the individuals. And in this case, he was a pharmacist and the government has argued... Means of identification with respect to entities. But the names, the IDs that he was using were individual names. And I don't remember off the top of my head what those gentlemen's names were, but he had two specific names that were handwritten on a piece of paper that were submitted. Giving, basically misleading, that those individuals had given him authority to pledge collateral for that entity, of which they were all members. Another important point is to consider the context of the statute and what the statute was intended to punish in this case. This is one of the only white-collar statutes that I can think of that has a mandatory minimum of two years. And in looking at the legislative history, like the court did in Miller, it's really intended to punish the most serious crimes. And the concern was that individuals were stealing identities  And so the statute was intended to punish the most serious crimes. And in this case, this instance, this submission, is not what the aggravated identity statute was intended to punish. There is an underlying health care fraud claim. And while, of course, we dispute liability... But not all health care fraud involves misuse of means of identification. No. I don't disagree with that. That's Medlock. That's the different service. Right. But my point is that the conduct that the government is alleging is not going unchallenged. So it's not to say that nothing is wrong here. Perhaps that is health care fraud, and that's for another day, for another argument. But the issue is whether that constitutes aggravated identity theft. And based on Miller and Medlock, we don't think that it does. I think we understand your argument. Thank you for answering our questions. Mr. Cushing, I think you reserve some time. Three minutes. Your Honor, I actually think my colleague on the other side here hit the nail on the head. Without... She probably thinks so, too. Without these identities, there would have been no claim. And that's the distinction between this case and Medlock. How about Miller, though? And this case and Miller. How is it distinct from Miller? All Miller did was submit a document that said the partnership or the entity had approved this and just listed names. He didn't forge signatures. He didn't use any other means of identification. And as my colleague also acknowledged in footnote 5 of that case, this court said he was acting on behalf of the entity, not on behalf of the individuals. Does the statute not apply to entities? Lies about the identification of an entity? Your Honor, I should know that. And off the top of my head, I'd be happy to submit a letter later on, but I don't believe that matters here because the way it was charged in Miller was that the identities that were stolen or the aggravated identity thefts had to do with the identities of the individuals. It didn't charge the theft of the identity of the entity. I don't think it does reach, but I don't want to say that for sure here because I didn't research that and that's my shortcoming. I apologize to the court, but I'd be happy to submit a letter next week or whenever the court directs to see if there's any cases on that. If we think it's helpful, we'll ask you. So that's the issue here. We've got a completely false claim submitted that would not have been possible without using the identification, the means of identification of the patient and the doctor. That distinguishes this case from Medlock. It distinguishes it from Miller and it dovetails it right in with White and the pattern instruction that is the definition this Court adopted in Medlock. So, Your Honors, based on that, the District Court erred here in dismissing Count 8. You said it was a good start when I did my during and in relation point. Are you still nervous about the proposition or are you willing to embrace it? I'm willing to embrace it, Judge. It is an element, obviously. It's during and in relation, too. I think maybe that's what that particular point really goes to. Without these identities, this claim, the claim would not have been possible at all. And so that shows that he was using it in relation to the health care fraud. If we adopt the definition that the District Judge used here and that my opponent advocates, then... She acknowledged, given White, that it goes beyond impersonation. So I think we have to be fair there. I agree, Judge. My time is up. May I conclude? My point was that health care fraud is a listed statute in the aggravated identity theft statute. If we adopt the reasoning of the District Court here, that pretty much counts out health care fraud as a predicate for All right. Thanks to both of you for your helpful briefs and arguments. We really appreciate it.